IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| EDUARDO LEO MARTINEZ, ADRIA MARIE GARZA, MIA ISABELLA MARTINEZ,  *Plaintiffs* | § § § § § § § § § § § | SA-20-CV-00806-XR |
| -vs- | | |
| CODY WALLACE, TROOPER;  *Defendant* | | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

On this date, the Court considered Defendant's motion for summary judgment (ECF No. 27) and Plaintiffs' response (ECF No. 28). After careful consideration, the motion is **DENIED**.

### BACKGROUND[1]

Plaintiffs Eduardo Martinez, his wife, Adria Garza, and their daughter, Mia Martinez, filed this civil action under 42 U.S.C. § 1983 for damages arising from the wrongful search of their family home by Defendant Cody Wallace, an officer of with the Texas Department of Public Safety.

On the evening of July 11, 2018, Mia Martinez, then nineteen years old, was watching a movie in the living room of her family home located at 13156 U.S. Hwy 181 in San Antonio, Texas (the "Property"), when she heard banging on the side of the house. She ran to the bedroom where her mother, Adria, was sleeping, and startled her awake. They heard glass breaking and, believing they were being robbed, ran into the bathroom, where Adria attempted to open a small window in order to escape. They heard someone trying to get into the bathroom, but never heard any of the

---

[1] The following facts are undisputed unless otherwise noted.

intruders identify themselves as law enforcement officials. As Mia was wrestling to keep the door closed, she noticed someone in a tan uniform outside of the bathroom. Believing the officers to have entered the home to stop the robbery, Mia slowly opened the door. As she opened the door and stepped toward her mother's bedroom, an officer raised a gun to Mia's face and said, "Show me your hands." Mia raised her hands. The officers ordered Mia and Adria to get down on the ground, where Mia was handcuffed.[2] Officers then escorted both women to the porch.

Eventually, one of the officers involved in executing the warrant to search the Martinez home identified himself as Trooper Cody Wallace. When Wallace asked Adria where her husband, Eduardo Martinez, was, she told him—truthfully—that Mr. Martinez was working the nightshift at the Dollar General warehouse. Wallace told her that he and the other officers were on the property to look for cocaine. Adria, who has been a paralegal for 30 years and has worked as an ordained minister, was alarmed. As she reviewed the search warrant, she noticed that it contained a different address and told the officers that they were searching the wrong property.[3] As Wallace surveyed the property surrounding the Martinez residence, Adria noticed him referring to an attachment to the warrant and saying to himself "something's different."

Despite these inconsistencies, the officers proceeded to search the premises, even after K-9 officers indicated to Wallace that they had found nothing. When the search ended, Adria and Mia entered their home to find broken glass, clothes and bedding strewn everywhere, collectibles and furniture broken, and sentimental items destroyed. The officers had not discovered any illegal items. After Wallace and his team left, Mia and Adria went to a hotel for the night because they could not remain in a home with broken windows.

---

[2]  Adria was not handcuffed because only one of the five officers at the scene had brought handcuffs.

[3]  In addition to Plaintiffs' residence, the search warrant included a second, totally unrelated address for "County of Bexar 2793 W Loop 1604, San Antonio Texas 78264." ECF No. 27-1 at 2.

2

Plaintiffs seek to recover for physical injuries, damage to their home and personal property, and mental anguish damages, asserting that the search was authorized by a defective warrant, which was itself supported by an affidavit containing false and misleading statements. Indeed, both documents contained inaccuracies beyond the wrong address Adria identified on the first page of the search warrant. For example, although the officers intended to search the premises for cocaine, both documents suggest that Mr. Martinez was concealing "evidence of methamphetamine trafficking" and "records, . . . including sales, purchases, and customers for methamphetamine trafficking." ECF No. 27-1 at 3, 5. More important, however, are Wallace's misstatements in the affidavit concerning his observation of a confidential informant ("CI") at the Martinez property and his failure to include exculpatory information that would have been relevant to the magistrate judge's probable cause determination.

Wallace sought and obtained the search warrant for the Martinez home based substantially upon information he claimed to have received from a CI. According to the fourth paragraph of the affidavit:

> The CI was introduced to the individual who is residing in the suspected place by other drug dealers in the San Antonio area. On 7/10/2018, I received information from the CI in reference to the CI visually observing half a kilogram of Cocaine at the suspected place. In addition to the CI visually observing the Half Kilogram of Cocaine, the CI observed a large amount of US Currency the CI knows was derived from the distribution of Cocaine. *Within the last 48 hours of this affidavit, I visually observed the CI enter into the suspected place, at which time the CI visually observed the Cocaine.*

*Id.* at 5 (emphasis added). The most glaring defect in the three-page affidavit is the false statement that Wallace visually observed the CI enter the property within 48 hours of his application for a search warrant. Wallace affirmatively testified that he was not present when the CI allegedly entered the Martinez home and that he had never seen the CI at the Property at any time prior to the search of the residence. ECF No. 28-4, Wallace Dep. at 130:11–13, 16–18.

3

Indeed, it is apparent from the descriptions of the Property included in Wallace's affidavit that he had not made any observations of the Martinez residence in the days leading up to his application for a search warrant. Rather than surveilling the Property for himself or asking for a description of the location from the CI,[4] Wallace attached a Google Earth photo from six months before his application to his affidavit, and relied solely upon that photo to swear out a description of the property that he sought to search. *See* ECF No. 27-1 at 7. As a result, the description of the Property that Wallace and the CI had allegedly observed in the past 48 hours contained numerous errors. For example, the affidavit identifies three structures purported to be on the Property: a one-story mobile home, a metal enclosed structure to the east of the main residence, and a metal shed or barn on the southeast boundary of the property. ECF No. 27-1 at 4. Among other discrepancies, Wallace admitted during his deposition that, in fact, there was no metal enclosed structure to the east of the main structure when he sought the warrant. ECF No. 28-4, Wallace Dep. at 143:21–25, 147:1–4.

In addition to these affirmative misstatements of fact, Wallace's testimony establishes that, despite multiple attempts and opportunities to do so, he could not corroborate any of the information produced by the CI before swearing to the affidavit. The CI provided several pieces of information about the suspect to whom he had allegedly been introduced: the suspect's name (Eduardo Martinez), a physical description of the suspect, his address, his phone number, and a description of his vehicle (including a license plate and a photo of that license plate). To confirm that the named suspect was associated with the address the CI provided, Wallace sent a picture of Plaintiff Eduardo Martinez to the CI, seeking positive identification. The CI, however, affirmatively stated that the person in the photograph was not the suspect. *Id.* at 174:20–25;

---

[4] When a fellow officer drove the CI by the Property on the day the search warrant was executed, the CI only identified the adjacent car lot and gate, not the Martinez property. ECF No. 28-4, Wallace Dep. at 183:1–8.

4

176:14–19. Indeed, Wallace conceded that though Plaintiff Eduardo Martinez is Hispanic, he does not otherwise resemble the description of the suspect in the affidavit—an "older Hispanic male with dark complexion, approximately 55 to 65 years of age." *See* ECF No. 27-1 at 5; ECF No. 28-4, Wallace Dep. at 175:6–14, 176:10–19. Given the discrepancies in age and appearance, Wallace asked his analysts to provide the CI with photographs of anyone they could associate with the Property, including Plaintiff Eduardo Martinez's father and stepfather. ECF No. 28-4, Wallace Dep. 155:2–25, 176:14–177:16. Again, the CI indicated that none of the people in those photographs was the suspect to whom he was introduced. *Id.* The CI could not identify anyone that the investigation had linked to the Martinez property. *Id.* at 177:13–16, 202:3–7.

Other efforts at corroborating the CI's information were equally unavailing. For instance, Wallace was unable to link the phone number that the CI provided to any member of the Martinez family or to their property, in any manner. *Id.* at 177:17–178:7. Likewise, Wallace testified that he never observed a vehicle on or near the Martinez property that matched the information provided by the CI. *Id.* at 170:3–6, 184:1–9. The only vehicle with a male driver that he did see in the vicinity was a red truck that did not match the CI's information about the suspect's vehicle. *Id.* at 139:8–11, 187:15–17. Wallace also suggested that the CI conduct a "buy bust" by purchasing cocaine from the suspect, but the CI refused to participate. ECF No. 28-4, Wallace Dep. at 173:5–25. Ultimately, Wallace admitted that he knew that Plaintiff Eduardo Martinez was not the suspect to whom the CI had referred.; ECF No. 28-6 at 1 *Id.* at 177:13–16.

Thus, before seeking the warrant with his sworn affidavit, Wallace was aware that the CI could not positively identify anyone associated with the Property as the suspect and that the CI's other information about the suspect could also not be linked to the Property or corroborated.

Nonetheless, Wallace proceeded with his application—failing to advise the magistrate judge who ultimately signed the warrant about any of these inconsistencies—and executed the warrant.

Plaintiffs allege claims against Wallace under 42 U.S.C. § 1983 for obtaining and executing a search warrant without probable cause in violation of their rights under the Fourth Amendment. ECF No. 1. Wallace now moves for summary judgment, arguing that Plaintiffs' claims are precluded by the doctrine of qualified immunity because there is no evidence that the misstatements in the affidavit were made intentionally or with a reckless disregard for the truth ECF No. 27.

## DISCUSSION

### I.   Legal Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539,

541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

II.     **Analysis**

Defendant seeks summary judgment on the basis that Plaintiffs' claims are precluded by the doctrine of qualified immunity.[5] Qualified immunity protects public officials from suit and

---

[5] "A good faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show the defense is not available." *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016).

liability for damages under § 1983 unless their conduct violates a clearly established constitutional right. *Mace v. City of Palestine,* 333 F.3d 621, 623 (5th Cir. 2003). In addressing whether qualified immunity applies, courts engage in a two-step inquiry, determining (1) whether a federal statutory or constitutional right was violated on the facts alleged; and (2) whether the defendant's actions violated clearly established rights of which a reasonable person would have known. *Id.* at 623–24. The two steps of the qualified-immunity inquiry may be performed in any order. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

Under the second step of the inquiry, "[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011) (citations, quotation marks and alteration marks omitted). The Court does not need "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* Clearly established law is not determined "at a high level of generality." *Id.* at 742. Instead, "[t]he dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Mullenix v. Luna,* 511 U.S. 7, 12 (2015) (citation and emphasis omitted). The inquiry must look at the specific context of the case. *Id.*

The Fourth Amendment guarantees 'the right of the people to be secure in their persons against unreasonable searches and seizures and that no warrants shall issue, but upon probable cause.'" *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019) (quoting U.S. CONST. amend. IV). Thus, a police officer seeking the issuance of a search warrant must present an affidavit containing facts sufficient to "provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates,* 462 U.S. 213, 239 (1983). Claims alleging that

misrepresentations and falsehoods in warrant application affidavits implicate that protection. *Id.*; *see Franks v. Delaware*, 438 U.S. 154, 164–65 (1978) ("when the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing."). Since the Supreme Court's decision *Franks*, it has been clearly established that in a person's "Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes a false statement knowingly and intentionally, or with reckless disregard for the truth, and (2) the allegedly false statement is necessary to the finding of probable cause." *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018).

Plaintiffs assert that the probable cause showing which supported the search warrant was predicated on Wallace's false statement that he had observed the CI enter the Property and his failure to include the exculpatory information he uncovered in his attempts to corroborate the information he received from the CI. In order to withstand summary judgment on such a claim, Plaintiffs must first demonstrate a genuine fact issue as to whether the affidavit included a false statement that was made "knowingly and intentionally, or with reckless disregard for the truth," *Franks*, 438 U.S. at 155–56, or included "misleading material omissions that were recklessly, intentionally, or knowingly omitted from the affidavit," *Marks v. Hudson*, 933 F.3d 481, 487 (5th Cir. 2019) (citing *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006)). Upon such a showing, the Court must examine the affidavit with the false material set to one side, the omitted facts inserted, and determine "whether the reconstructed affidavit would still support a finding of probable cause." [6] *Koehler*, 470 F.3d at 1113.

---

[6] Wallace's motion does not address the second prong of this inquiry, *see* ECF No. 27, but in the interest of clarity and completeness, the Court will discuss the impact of the misstatements and omissions on the probable cause determination.

*A.     Whether the misrepresentations and omissions were made knowingly and intentionally or with a reckless disregard for the truth.*

Defendant argues that Plaintiffs' claims fail as a matter of law because "there is no evidence to show that the inclusion of [the misstatements in Wallace's affidavit were] either reckless or intentional." ECF No. 27 at 4–5. This argument appears to rely on Wallace's deposition testimony that his misstatement that he had observed the CI enter the Martinez property was a "mistake." *Id.* at 5 (citing ECF No. 27-5, Wallace Dep. at 202:4–7); *see also* ECF No. 28-6, Requests for Admission at 2 (characterizing the statement as "a typo").

It is true that "negligence alone will not defeat qualified immunity." *Brewer v. Hayne*, 860 F.3d 819, 825 (5th Cir. 2017). The Supreme Court explained in *Franks* that an affidavit need not be "'truthful' in the sense that *every* fact recited in the warrant affidavit is necessarily correct." 438 U.S. at 165. The standard must allow for some errors because "probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Id.* "But surely," the Supreme Court reasoned, the affidavit must be "'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.*

The Court uses a standard of "objective reasonableness" to define "the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional [search]." *Malley v. Briggs*, 475 U.S. 335, 344 (1986) (holding "that the same standard of objective reasonableness . . . applied in the context of a suppression hearing . . . defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest"). Qualified immunity will not attach if a "reasonably well-trained officer in [the officer's]

position would have known that his affidavit failed to establish probable cause." *Id.* As the Fifth Circuit has explained:

> Objective reasonableness in this context depends in part on the information available to the officer. Generally, when an officer is aware of material information casting doubt on, or directly contrary to, the information contained in a warrant affidavit, that fact may serve as evidence that "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."

*Winfrey v. Jacinto Cnty.*, 481 F. App'x 969, 978 (5th Cir. 2012) ("*Winfrey I*") (citations omitted) (quoting *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984)). Given that objective reasonableness depends on the information available to an officer at the time the affidavit is signed, the Supreme Court has held factual errors premised on an affiant's personal knowledge to a higher standard than errors derived from information provided by others. *See Franks*, 438 U.S. at 163–64 ("Here, whatever the judgment may be as to the relevancy of the alleged misstatements, the integrity of the affidavit was directly placed in issue by petitioner in his allegation that the affiants did not, as claimed, speak directly to [the petitioner's co-workers]. Whether such conversations took place is surely a matter 'within the personal knowledge of the affiants'") (alteration marks omitted).

Despite the "objective reasonableness" standard, the Fifth Circuit has held that "[l]iability under *Franks* requires a certain mindset." *Nerio v. Evans*, 974 F.3d 571, 577 (5th Cir. 2020). Demonstrating a "reckless disregard for the truth" requires "evidence that [the affiant] in fact entertained serious doubts as to the truth of the statement." *Hart v. O'Brien*, 127 F.3d 424, 449 (5th Cir. 1997), *abrogated on other grounds*; *Kalina v. Fletcher*, 522 U.S. 118 (1997) (citing *St. Amant v. Thompson,* 390 U.S. 727, 731 (1968) (setting forth standard for reckless disregard of truth in libel cases)); *United States v. Williams,* 737 F.2d 594, 602 (7th Cir. 1984) (adopting First Amendment standard for recklessness in *Franks* context); *United States v. Tomblin,* 46 F.3d 1369,

11

1388 (5th Cir. 1995) (citing recklessness standard in *Williams* with approval)). Because evidence of a defendant's subjective state of mind is "typically held in [his] exclusive possession," *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266 (5th Cir. 1991), however, it is generally established through indirect or circumstantial evidence. *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1070 (5th Cir. 1987). A factfinder may infer reckless disregard from circumstances evincing "obvious reasons to doubt the veracity" of the allegations. *St. Amant*, 390 U.S. at 731; *see also Tomblin,* 46 F.3d at 1377 ("[R]ecklessness can in some circumstances be inferred directly from the omission itself.") (citing *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980)).

An officer who provides false or materially misleading information in an affidavit imposes on the authority of a magistrate judge to determine independently, based on the totality of the circumstances, whether probable cause exists. The warrant requirement imposes an obligation on an affiant to "set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Franks*, 438 U.S. at 165. That extends to providing facts concerning the reliability of the information and the credibility of its source and to avoiding "deliberately or reckless[ly] false statement[s]." *Id.* When evaluating the reliability of information provided by an informant in support of a search warrant, the totality of the circumstances includes (1) the nature of the information provided; (2) whether the police have had the opportunity to see or hear the matter reported; (3) the veracity and basis of the informant's knowledge; and (4) whether any information provided by the informant has been independently verified by police. *United States v. Mays*, 466 F.3d 335, 343–44 (5th Cir. 2006) (citing *United States v. Morales*, 171 F.3d 978, 981–82 (5th Cir. 1999)).

Based on these factors, Wallace's warrant affidavit likely deprived the magistrate judge who ultimately issued the search warrant of an opportunity to independently weigh whether the

probable cause existed to search the Martinez residence. *See Winfrey I*, 481 F. App'x at 979–80. Wallace falsely swore that he had "visually observed the CI enter into the suspected place, at which time the CI visually observed the Cocaine." ECF No. 27-1 at 5. Whether Wallace had observed the CI enter the Martinez residence was surely a matter within his personal knowledge. *See Franks*, 438 U.S. at 163–64. Moreover, Wallace's assurance that he personally witnessed the CI enter the Martinez residence casts an unwarranted air of credibility on many of the other statements in the affidavit, including Wallace's inaccurate descriptions of the property he sought to search.

Wallace's unsuccessful attempts to verify the information provided by the CI evince "obvious reasons to doubt the veracity" of the CI's allegations and thus constitute circumstantial evidence of Wallace's reckless disregard for the truth. *St. Amant*, 390 U.S. at 731; *see also Tomblin,* 46 F.3d at 1377. At the time Wallace applied for the search warrant, he was aware of material information casting doubt on the assertions contained in his warrant affidavit. *Winfrey I*, 481 F. App'x at 978. Specifically, Wallace was aware that the CI had reviewed photos of Plaintiff Eduardo Martinez, his father and his stepfather—every male associated with the Martinez residence—and indicated that none of the photos depicted the suspect "Eduardo Martinez" to whom the CI had been introduced. Wallace also knew that the phone number the CI provided for the suspect could not be linked to anyone associated with the Martinez property.

Although paragraph 2 of the affidavit that notes that "we have not been able to positively identify" the suspect, ECF No. 27-1 at 5, this statement, though technically true, is itself is a materially misleading representation of the CI's negative identification of everyone associated with the Martinez property. *See United States v. Namer*, 680 F.2d 1088, 1093 n.10 (5th Cir. 1982) ("The affidavit's statement is no less a misrepresentation because it manipulates the facts subtly."). As Plaintiffs observe, the statement would not have been misleading had the investigation "left

open the possibility that [Plaintiff] Eduardo Martinez might actually be the suspect." ECF No. 28 at 16 n.8. But here, "the exculpatory facts foreclosed the possibility." *Id.* There was no reason for Wallace to believe that the suspect—or any of his alleged contraband—would be found at the Martinez residence. Accordingly, a reasonable jury could conclude that a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. *Winfrey I*, 481 F. App'x at 978.

In short, Wallace knew that Plaintiff Eduardo Leo Martinez was not the suspected party described in his sworn affidavit, but nonetheless sought to search the Martinez home. ECF No. 28-6 at 1. The magistrate judge should have been afforded an opportunity to review these exculpatory facts in making a probable cause determination. *See Mays*, 466 F.3d at 343–44 (in evaluating the reliability of information provided by an informant, a court should consider "the veracity and basis of the informant's knowledge" and "whether any information provided by the informant has been independently verified by police"); *Winfrey I*, 481 F. App'x at 979 ("It was . . . problematic to omit all of the information casting doubt on [the informant's] credibility" from the affidavit). The information contradicting the CI's identification of the suspect and the Property known to Wallace at the time he applied for a search warrant cast doubt on the information in his affidavit, and offers circumstantial evidence that the misleading statements and omissions in his affidavit were made with a reckless disregard for the truth. *See Tomblin,* 46 F.3d at 1377.

The summary judgment evidence offers a substantial showing that Wallace's affidavit in support of his search warrant contained material falsehoods and omitted relevant exculpatory information that bear directly upon the asserted bases for finding probable cause to search the Martinez property. Viewing the evidence in the light most favorable to Plaintiffs, the Court concludes that there is an issue of material fact as to whether the misstatements and omissions in

Wallace's affidavit were made "knowingly and intentionally, or with reckless disregard for the truth," *Franks*, 438 U.S. at 155–56.

Undoubtedly, certain of the errors in Wallace's affidavit, such as the inclusion of an unrelated address and the stray references to methamphetamine rather than cocaine, were the result of his carelessness in preparing the application. But his negligence with respect to certain portions of the affidavit does not immunize the remainder of the misrepresentations and omissions in the affidavit from judicial scrutiny, especially given the materiality of many of these errors, as discussed below. There is ample circumstantial evidence that Wallace knew or should have known that the defects in his affidavit could lead to a search without probable cause. *Winfrey*, 494 F.3d at 494. To disregard this evidence and accept Wallace's assertion that the misstatements were a "mistake" or a "typo" at face value would require the Court to make credibility determinations and weigh the evidence and thereby improperly invade the province of the jury. In short, "the evidence presented is sufficient to support a finding that [Wallace's] conduct," as argued by Plaintiffs, "was unreasonable in light of the well-established principle requiring probable cause for the issuance of a [search] warrant." *Id.*

  2. *Materiality of the false assertions and omissions to probable cause determination.*

Proceeding to the second prong of *Franks*, the Court must examine the affidavit with the false material set to one side, the omitted facts inserted, and determine "whether the reconstructed affidavit would still support a finding of probable cause."⁷ *Koehler*, 470 F.3d at 1113. Probable cause is determined through an examination of a totality of the circumstances. *United States v. Fields*, 456 F.3d 519, 523 (5th Cir. 2006). It "does not require proof beyond a reasonable doubt,

---

⁷ Wallace's motion does not address the second prong of this inquiry, *see* ECF No. 27, but in the interest of clarity and completeness, the Court will discuss the impact of the misstatements and omissions on the probable cause determination.

but only a showing of the probability of criminal activity." *United States v. Daniel*, 982 F.2d 146, 151 (5th Cir. 1993). Thus, in determining the validity of a search warrant, this Court must "make a practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit . . ., there is a fair probability that contraband or evidence of a crime will be found at a particular place." *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004) (citations omitted).

Here, the reconstructed affidavit would include the following facts: (1) The CI was introduced by other drug dealers in the San Antonio area to an individual named Eduardo Martinez; (2) on July 10, 2018, the CI informed Wallace that he had visually observed half a kilogram of Cocaine and a large amount of US Currency the CI knows was derived from the distribution of Cocaine at the Property; (3) when provided with a photo of an individual named Eduardo Martinez who resides at the Property, the CI stated that the person in the photograph was not the suspect; (4) provided with photos of other individuals associated with the Property, the CI confirmed that these individuals were not the suspect to whom he had been introduced; and (5) the phone number provided by the CI could not be linked to anyone associated with the Property.

Weighing the totality of the circumstances, the Court concludes that a reasonable magistrate would not have issued a warrant on the basis of this corrected affidavit because it offers no reason to believe that anyone associated with the Property was in any way involved with cocaine distribution. Without a trustworthy connection of the CI's information to the Martinez property, there would be no probable cause to support a warrant to search that property. *See generally United States v. Ortega*, 854 F.3d 818, 828–29 (5th Cir. 2017) (where excised affidavit provided no support for an allegation that cocaine would be found in a particular house, the corrected affidavit was insufficient to establish probable cause). Stripped bare of Wallace's misstatements and appropriately supplemented with the material omissions noted above, there is at least a fact

16

question as to whether the affidavit established probable cause to support the warrant that Wallace executed upon the Martinez property. That fact question precludes summary judgment on the basis of qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 27) is **DENIED.**

It is so **ORDERED**.

**SIGNED** this 6th day of December, 2021.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE